Dear Judge Smith:
You requested the opinion of this office relative to funds retained by the Monroe City Court (the "Court") in light of the ruling in City ofMonroe v. Judge Larry Lolley, et al., 660 So.2d 94 (La.App. 2nd Cir. 1995), writ denied, 95-2359 (La. 12/8/95), 664 So.2d 428 (La. Dec 08, 1995). The history of the litigation was described in the Second Circuit Court of Appeals decision in pertinent part as follows:
 "When Judges Jefferson and Diehlman C. Barnhardt (who Judge Charles succeeded) came on the city court bench in 1991, they discovered that prior administrations had, for many years, failed to institute a proper system to account for the fees paid to the court by litigants filing civil cases. Prior city court administrations had paid out certain standard costs, such as filing fees, service of process, etc., and then delivered the remainder of the amount collected to the general fund of the City of Monroe. It is acknowledged that this method of accounting made no distinction between earned civil fees and the balance in advanced deposits from litigants.
 Judges Jefferson and Barnhardt immediately set to work to rectify this problem. In 1991 they ceased payment to the city until they could implement a proper accounting system. Their work culminated in the 1994 implementation of a computer system that accurately distinguishes between the amount the litigant deposits and the amount subsequently earned by the court. However, a question remains regarding a backlog of cases and the amount accrued therefrom for which no accurate accounting existed.
 In order to isolate the accrued amount, the clerk has opened two accounts. Judicial Fund Number 1 contains funds from the backlogged cases. At time of trial this account contained approximately $326,000. In order to determine what part of the funds in Judicial Fund Number 1 are earned fees, the city court has hired a temporary deputy clerk, who is paid by Monroe, to analyze each case. Testimony at trial indicated that, as the deputy clerk determines what part of the fees are earned, that amount is being transferred to the city. The evidence further shows that the records in the cases being analyzed are so incomplete that what was originally estimated to be a six month operation is now estimated to take at least six years to complete. The other account opened by the court is designated Judicial Fund Number 2 and is the "clean" account for which accurate accounting exists. As of trial, this account contained approximately $23,000."
Monroe sought a writ of mandamus against the judges and the clerk of city court to order them to pay into Monroe's general fund the amounts statutorily collected from litigants as deposits for advanced costs. The District Court granted the mandamus. The Second Circuit held that no part of the deposit for costs made to the court became a "fee" under the statute until the cost was earned and therefore Monroe was entitled to a mandamus for the earned fees, but not the unearned amount of the deposit.
The Second Circuit also held that the Court failed to carry out its statutory duty to maintain accurate accounting records to facilitate the monthly transfer of earned fees for years prior to the filing of the lawsuit. Accordingly, the Court affirmed the mandamus ordering the immediate transfer of the funds in Judicial Fund Number 1 to Monroe's general fund.
You advise that prior to and after the City of Monroe decision, the court was faced with a backlog of cases and the amount accrued therefrom that cannot be linked back to the individual suits nor can it be ascertained whether they are earned or unearned, without having to manually research an estimated 16,000 cases. Your questions are:
 Whether the remaining balances/funds on inactive cases, pre-"City of Monroe" through 2000, that are not identifiable, be transferred to the City's General Fund by court order?
 Also, whether the language in the court order, which will provide that litigants affected by the transfer, shall have a claim against the city is sufficient for the transferring of liability? Meaning, if the funds are transferred and someone comes forth to claim a refund of unearned fees and the fees are no longer in the possession of the court; will the court be liable if the litigants are unable to collect from the city?
In rendering their decision, the Second Circuit discussed R.S.13:1875(10) (a) which provides in pertinent part as follows:
 (10) (b) . . . Civil fees shall be assessed litigants in civil matters for the services of the judge in accordance with the civil fee bill of clerks of district courts, and all of such civil fees shall be deposited monthly by the clerk of the City Court of Monroe in the general fund of the city of Monroe . . .
In their discussion of the backlog, the Second Circuit stated in pertinent part:
 "Therefore, since defendants are at this time unable to show what portion of Judicial Fund Number 1 remains advanced deposits for costs, in keeping with the purpose of LSA-R.S. 13:1875(10) (b) (providing funding for court operations), the issuance of the Writ of Mandamus ordering immediate transfer of the funds in this account to the city was not in error . . . If at any time in the future the city court has inadequate funds to honor requests for refunds of unused deposits to the litigants in the cases contributing to this account, the city should provide the necessary funds for this purpose. We therefore find there was sufficient proof by Monroe to support the issuance of the Writ of Mandamus to require the defendants to transfer the accrued sum in Judicial Fund Number 1 to the general fund of the city."
Presumably any funds which were in Judicial Fund Number 1 when the Cityof Monroe litigation became final has been remitted to the Monroe general fund in accordance with the Second Circuit's decision. As to monies which are still not identifiable as earned fees or unearned deposits, it would appear appropriate for the Court, in accordance with the rationale of City of Monroe, to transfer those funds to the Monroe general fund per court order. In the future, any unearned deposits which are not returned to the person who made the deposit should be remitted to the State Treasury in accordance with the unclaimed property laws. R.S. 9:151, et seq.; Op.Atty.Gen. No. 90-654.
As to whether remitting unidentifiable monies to the Monroe general fund will shield the Court from liability should Monroe then not pay a person claiming a refund of unearned fees, as quoted above, the Second Circuit suggested that Monroe should make the refund. We suggest that in the event that the unidentifiable monies were transferred to the Monroe general fund and Monroe did not refund the unearned deposit to the claimant, the claimant would have a cause of action against the Court, who would then have a cause of action against Monroe.
Trusting this adequately responds to your request, we remain
Very truly yours,
 RICHARD P. IEYOUB ATTORNEY GENERAL
 BY: ________________________ MARTHA S. HESS Assistant Attorney General
RPI:MSH:
DATE RELEASED: December 2, 2002